179 N.J. Super. 280 (1981)
431 A.2d 848
IN THE MATTER OF CONTRACT FOR ROUTE 280 SECTION 7U EXIT PROJECT.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 1981.[1].
Decided May 27, 1981.
*281 Before Judges BOTTER, KING and McELROY.
Mark D. Larner argued the cause for appellant J.A. Cavanaugh Contractors, Inc. (Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys; Robert Novack, on the brief).
Dante J. Romanini, Deputy Attorney General, argued the cause for respondent Commissioner of Transportation (James R. Zazzali, Attorney General of New Jersey, attorney; John J. Degnan, former Attorney General of New Jersey; Andrea M. Silkowitz, Deputy Attorney General, of counsel).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Appellant J.A. Cavanaugh Contractors, Inc. (Cavanaugh) appeals from the rejection of its bid of $1,655,608 for a highway construction project known as Route 280, Section 7-U Exit Ramp. The bid was approximately $84,000 less than the bid of the second low bidder. Appellant's bid was rejected because it was accompanied by a schedule showing the status of contracts *282 on hand as of August 31, 1980 instead of as of September 30 as required by the bid specifications.
The facts are not in dispute. The bids were opened at 10:00 a.m. on October 23, 1980. As part of the financial statement to be submitted by each bidder, the specifications required an up-dated statement as to the status of contracts on hand. The governing date was September 30, 1980. Instead, appellant annexed a schedule dated August 31, 1980. This appears to have been entirely inadvertent. The form to which the August 31 schedule was attached, DC-74B, even related to a different project. The aggregate figures in both schedules were comparable in many respects. For example, the totals in various categories were:

 August 31 Sept. 30
 Adjusted contract amount $9,866,282 $8,711,313
 Amount earned and billed 7,428,591 6,845,366
 Retainage 361,399 399,078
 Amount now due excluding retainage 630,703 657,739
 Balance to be completed 2,344,240 1,805,188

No purpose is evident that would explain the submission of the wrong schedule. In the afternoon of the bid opening date, October 23, 1980, appellant hand-delivered to the Department of Transportation (DOT) the correct document accompanied by a letter stating that the August 31 schedule was attached erroneously "through inadvertence" although the September 30 data "was ready and prepared to be submitted with our Bid." Appellant took the position that the error should be waived by DOT since "the two Schedules involved no substantial difference, and since there can be no prejudice to the Department or to the other bidders...." DOT affirmed its rejection of the bid stating: "While on the surface this deviation might seem minor it has consistently been the position of this Department that such an omission is a material departure from the specifications and thus warrants rejection." Stating that the "omission is not merely a technical one," DOT asserted that the data is useful in determining the bidder's "physical and financial ability to adequately *283 perform at the time of the bid." In addition, the DOT cited a case in which this court summarily determined under R. 2:8-3(b) the rejection of a bid which it found "failed to comply with a material condition of the bidding specifications." However, the facts of the case are not recited in the unpublished order by which the case was decided.
It is an established principle that "material conditions" in bidding specifications cannot be waived. Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 411 (1975). The problem more often is how to define a "material condition" in or a "material deviation" from bidding requirements. As noted in the Terminal Constr. Corp. case, supra, "while the submission of security with a bid is material and may not be waived," citing Hillside Tp. v. Sternin, 25 N.J. 317 (1957), "the form in which that security is submitted may vary slightly from that set forth in the specifications." 67 N.J. at 411. In an effort to describe a general rule, Justice Mountain stated in Terminal:
Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived. [at 412]
We are satisfied that the deviation in this case could be waived by the Commissioner. We note that this is not a case of an "omission" to furnish certain financial data, but rather the submission of data that was outdated by one month. Assuming the error to have been inadvertent and not made in bad faith, and that the more current data promptly furnished to correct the error did not substantially alter the contractor's ability to perform, we see no prejudice to DOT or to other bidders if the timeliness of the data used for the updated status of contracts report is waived. Thus, the Commissioner would be evaluating the ability to perform on the basis of a contract status report *284 that is stale by one month, which was promptly amended by the submission of the more current data. See Marvec Allstate, Inc. v. Gray & Fear, Inc., 148 N.J. Super. 481 (App.Div. 1977), in which we upheld the waiver of a bid bond in the proper amount in favor of a low bidder who inadvertently submitted a $20,000 bid bond and substituted a proper bond in an amount in excess of $122,000 within 24 hours. The court there said:
Accordingly, if there is substantial compliance with the requirements established by the notice to bidders, and it appears that the lowest responsible bidder is prepared to execute the proffered contract and furnish sufficient security for its performance, it is in the public interest that such bid, though perhaps irregular, be accepted, and, if necessary, that the bidder be given the opportunity to correct any irregularity that will not change the substance of the bid. [at 488-489]
Cf. P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199, 203 (App.Div.), certif. granted 31 N.J. 75 (1959), app. dism. 31 N.J. 556 (1960), holding the submission of an uncertified check to be a waivable defect in form that did not constitute a "material departure" or "substantial variance" from the bidding requirements, where the check was later certified; William M. Young & Co., Inc. v. West Orange Redevelopment Agency, 125 N.J. Super. 440 (App.Div. 1973), waiving the two-minute tardiness of a bid submission, while stating that the timeliness of a bid submission may not be waived in every case.
We conclude that the Commissioner has authority to waive the deviation in this case. We recognize that the financial capacity of a bidder is significant. Hillside Tp. v. Sternin, supra, 25 N.J. at 323. But financial ability is something that may have to be evaluated after the bids are opened even when all the required data has been submitted. It is doubtful that in all cases such evaluation can be soundly based solely on the material called for by the status of contracts-on-hand document. N.J.S.A. 27:7-35.8 provides that a bidder may be rejected "prior to the actual award of a contract" when developments subsequent to his classification "in the opinion of the commissioner would affect the responsibility of the bidder." The statute expressly provides that the Commissioner shall give the bidder "an opportunity *285 to present any additional information which might tend to substantiate the existing classification." See also, N.J.S.A. 27:7-31, which provides that the Commissioner may require "additional evidence of the ability of a contractor to perform the work" beyond the proposal bond that must accompany each bid. Thus, the statutes contemplate and authorize the Commissioner, after bids are opened, to make further inquiry into a contractor's capacity to perform. A contractor's financial capacity is a matter of primary concern to the Commissioner in order to assure performance in the public interest. It is not a basis on which other bidders can compete; it cannot alter the bids submitted by other contractors. Moreover, difficulties or disputes in the performance of other contracts would more seriously affect a bidder's ability to perform. But such information is not called for directly on the status-of-contracts form. N.J.A.C. 16:65-1.2(n) provides that in the case of contractors in the highest classifications of "J" through "R," the Commissioner may accept an averment "that there has been no material change in financial condition since the data of submission for classification" if the "proper affidavits" are submitted accompanied by "the Status of Contracts on Hand as of the date of the financial information specified in the Notice to Contractors." The regulation provides, however, that the Commissioner may waive this requirement for a specific project if it is in the public interest. This suggests that some flexibility in the requirement can be tolerated. Appellant asserts that it is within this category, holding an "L" classification which allows bidding on projects of four to six million dollars. N.J.A.C. 16:65-1.2(d).
Accordingly, we remand the matter to the Commissioner to determine whether, on the facts of this case, he deems it in the public interest to waive the deviation in question. He should bear in mind that public policy favors awards to the lowest responsible bidder so long as fair competition in bidding is not impaired.
Reversed and remanded to the Commissioner of Transportation. We do not retain jurisdiction.
NOTES
[1] The appeal was argued on an accelerated basis on motion of respondent Commissioner of Transportation (Commissioner).